# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Delaware Township Board of   :
Auditors; Dennis Lee; Michael   :
Dickerson; and Jane E. Neufeld,   :
                 Appellants   :
  :
             v.   :    No. 1601 C.D. 2014
  :    Argued: September 14, 2015
Delaware Township; Pennsylvania   :
Municipalities Pension Trust;   :
Ileana F. Hernandez and Thaddeus   :
Parsell   :

BEFORE:     **HONORABLE BONNIE BRIGANCE LEADBETTER,** Judge
                **HONORABLE MARY HANNAH LEAVITT,** Judge
                **HONORABLE JAMES GARDNER COLINS,** Senior Judge

**OPINION BY**
**JUDGE LEADBETTER**                           **FILED: January 5, 2016**

Delaware Township Board of Auditors (Board of Auditors), Dennis Lee, Michael Dickerson, and Jane E. Neufeld (collectively, Appellants) appeal from an order of the Court of Common Pleas of Pike County that sustained the preliminary objections of Delaware Township, Pennsylvania Municipalities Pension Trust (Trust), Ileana F. Hernandez, and Thaddeus Parsell (collectively, Appellees) and dismissed Appellants' complaint. At issue is Section 606(b) of the Second Class Township Code (Code),[1] which mandates auditor approval for the participation of township supervisors who also are employed by the township in

---

[1] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 65606(b).

any employee capacity (supervisor-employees) in employee pension plans funded, in whole or in part, by townships. *White Deer Twp. v. Napp*, 985 A.2d 745, 752 (Pa. 2009). The legislature designed Section 606 of the Code to curtail decision-making by supervisors in areas involving their own self-interest and auditor approval for the inclusion of supervisor-employees in pension plans is one of the statutory safeguards in place. *Id.* Based on the well-pled, material and relevant facts, we conclude that Appellants would be unable to prove facts legally sufficient to establish a right to relief. Accordingly, we affirm.

In March 2006, the Delaware Township Board of Supervisors approved the creation of a new defined benefit pension plan for qualifying township employees. June 5, 2014, First Amended Complaint, ¶ 9; Reproduced Record (R.R.) at 103a. At the time of creation, all three members of the three-member Board of Supervisors were also paid township employees. *Id.*, ¶ 10; R.R. at 103a. On March 28, 2006, the Township called a special meeting with the Board of Auditors to consider the participation of the then existing township supervisor-employees in the pension plan, as required by Section 606(b) of the Code. Those supervisor-employees seeking to participate in the plan included Hernandez, township secretary, and Parsell, township roadmaster. *Id.*, ¶¶ 12 and 24; R.R. at 104a and 108a. Those present at the meeting included the then existing Board of Auditors, the Board of Supervisors, and the township solicitor. *Id.*, ¶ 13; R.R. at 104a. No written documentation about the plan was provided to the Board of Auditors before or during the meeting; the township solicitor and the supervisors merely provided a verbal overview of the plan under consideration. *Id.*, ¶ 14; R.R. at 104a.

2

Pursuant to the minutes of that meeting, the details and guidelines of plan were as follows:

a) The Pennsylvania State Association of Township Supervisors (PSATS) would manage the plan;

b) The Township would fund the plan, without employee contributions;

c) *The cost of the plan would be a flat $79,000 per year*;

d) *During year one, the additional cost to the Township, $69,000, would come from township reserves; for the remaining years, the additional cost would be added as a new line item to the budget; after three years, PSATS would contribute 50% of the cost of the plan*;

e) The plan would be available to all permanent township employees working full time for at least 35 hours a week;

f) Township employees would be eligible for pension benefits after 10 years of service or at age 65, but no sooner than age 65;

g) The benefits would consist of 1.0% of the employee's final monthly salary, averaged over the final 36 months of employment and multiplied by the years of service at retirement;

h) The benefits would vest 100% after 10 years of continuous service as a township employee;

i) The plan would be retroactive to January 1, 2006.

*Id*., ¶ 15; R.R. at 105a and Secretary's Minutes, Exhibit A to First Amended Complaint; R.R. at 122-23a (emphasis added). The minutes reflect that a motion was made, upon the joint recommendation of the Board of Auditors, to approve the proposed plan and for township supervisors Hernandez, Parsell and one other to participate in the proposed plan as presented.[2] *Id*., ¶¶ 16 and 17; R.R. at 105-06a.

---

[2] Before qualifying to participate in the plan, the third township supervisor-employee ended his career with the Township. First Amended Complaint, ¶ 16 n.1; R.R. at 105a.

3

Thus, the Board of Supervisors passed Resolution No. 2006-04 titled, "A Resolution to provide a pension plan and benefits for all non-police employees of Delaware Township, Pike County, Pennsylvania after ten (10) years of service or at age 65, whichever is later." *Id*., ¶ 18; R.R. at 106a and Resolution No. 2006-04, Exhibit B to First Amended Complaint; R.R. at 125-26a. Appellants aver that the Board of Auditors was not provided with a copy of the resolution before the March 28 meeting and did not sign the proposed resolution before its adoption by the Board of Supervisors. *Id*., ¶ 18; R.R. at 106a. However, the auditors did sign Resolution No. 2006-04, dating their signatures March 28. Appellants additionally aver that the Board of Supervisors in March 2006 also passed Resolution No. 2006-05, purporting to authorize the release of $79,000 from the Township's operating reserve fund to fund the new pension plan. *Id*., ¶ 19; R.R. at 106a and Resolution No. 2006-05, Exhibit C to First Amended Complaint; R.R. at 128a.

Appellants aver that the pension plan actually adopted by the Township is fundamentally different from the proposed plan that the Board of Auditors approved, with the following material differences: 1) the cost of the plan was not $79,000 per year, but instead fluctuated;[3] 2) PSATS will never contribute to the plan;[4] 3) if the Commonwealth does contribute, its contribution will never be

---

[3] Resolution No. 2006-04 does not contain any reference to the cost of the plan. Pursuant to the Auditor General's report, attached to the Complaint, the required annual contribution for 2006 was $80,380 and in all subsequent years through 2012 (the last year reflected in the Report), the required contribution varied from $58,557 to $78,543. *Id*., January 6, 2014 Auditor General's Compliance Audit Report for Delaware Twp. Non-Uniformed Pension Plan for the period of 1/1/2010 to 12/31/2012, Exhibit D to First Amended Complaint; R.R. at 130-41a. Accordingly, although the Auditor General's Report shows that the cost of the plan was variable rather than fixed, it was generally *less than* the amount discussed at the meeting.

[4] In a letter dated May 4, 2006, attached to the Complaint, Donna L. Savidge, Director of Insurance Services for PSATS, advised the Township that she wished to correct the notation in their March 28, 2006 minutes that PSATS would contribute 50% of the cost to the Township **(Footnote continued on next page…)**

4

50% and will not be based on any percentage; and 4) the plan was made retroactive to the date of hire of each township employee.[5] *Id.*, ¶¶ 20 and 21; R.R. at 106-07a. The terms described by Appellants as inconsistent with the adopted plan, sub paragraphs c and d, are not mentioned at all in the Resolution; otherwise, the terms outlined in the minutes are consistently reflected in the Resolution.

Specifically regarding Hernandez and Parsell, Appellants aver that Parsell, but not Hernandez, was reelected to the office of township supervisor after the vote to approve the plan. Parsell sat for an additional term, but Hernandez's term as supervisor ended in January 2012, at the Township's reorganization meeting, and her employment as a township secretary ended prior thereto. *Id.*, ¶¶ 25-28; R.R. at 108a.

In Count 1-declaratory judgment, Appellants request that common pleas enter judgment in their favor in the nature of a declaration providing that: 1) the Board of Auditors never approved the plan established under Resolution No. 2006-04 for participation by supervisor-employees; 2) Hernandez and Parsell are not entitled to pension benefits under the plan; 3) supervisor-employees, past, present and future, are not entitled to participate in the plan; and 4) such other relief as deemed just, reasonable, and appropriate. *Id.* at 14-15; R.R. at 114-15a.

---

**(continued…)**

after three years and clarify that PSATS would never contribute anything to the plan. Rather, after three years, the Auditor General's Office would issue state aid and the reimbursement would be based on the "unit value" designated by that office and not a certain percentage of the pension plan. *Id.*, ¶ 23; R.R. at 107-08a.

[5] This averment is inconsistent with the terms of Resolution No. 2006-04, which states that: "This Resolution shall become effective January 1, 2006." *Id.*, Resolution No. 2006-04, Exhibit B to First Amended Complaint; R.R. at 126a.

5

In Count 2-injunctive relief against the Township and the Trust, Appellants aver that the pension plan is *ultra vires* and that payment pursuant thereto is in direct contravention of the Code and the Pennsylvania Constitution such that payment is illegal and constitutes *per se* irreparable harm. *Id*., ¶¶ 62 and 63; R.R. at 116a. Specifically, Appellants request that the Township and Trust be enjoined from paying pension benefits to Parcell and Hernandez because the plan, as established, was not approved by the Board of Auditors. Regarding Hernandez, Appellants cite both the Code and the Pennsylvania Constitution in support of their request.[6] Further, they request that the Trust be enjoined from distributing funds "to any former, current or future" supervisor-employees who may claim eligibility for benefits under the plan. *Id*. at 17; R.R. at 117a.

Finally, in Count 3-injunctive relief against Hernandez and Parsell, Appellants request that the supervisor-employees be enjoined from accepting and retaining pension benefits and that they disgorge all payments made to them, to date, on the ground that the plan, as established, was not approved by the Board of Auditors. Regarding Hernandez, Appellants again contend that she is barred under both the Code and the Pennsylvania Constitution from receiving a pension. *Id*. at 19-20; R.R. at 106a.

Appellees filed preliminary objections to the first amended complaint, essentially maintaining that it should fail as a matter of law because the Board of Auditors approved the plan and Hernandez did not need to be reelected to receive benefits. Common pleas sustained the preliminary objections and dismissed the

---

[6] In their brief, Appellants specify Article III, Section 27 of the Pennsylvania Constitution, which provides: "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment."

complaint, concluding: 1) the approval of the Board of Auditors was evidenced by the minutes of the March 28, 2006 meeting and their countersignatures on Resolution No. 2006-04; 2) it was not the court's function to overturn an "approved" pension plan even if the Board of Auditors failed to perform its duties with due diligence at the time of approval; and 3) Hernandez was eligible to receive pension benefits based on her status as an employee even though she did not serve another term as supervisor after the plan's creation. Appellants' appeal followed.

Appellants raise three issues: 1) whether common pleas erred in determining that the Board of Auditors approved the participation of supervisor-employees in the adopted pension plan; 2) whether it erred in determining that the participation of such employees does not constitute compensation "of the elected office" under Section 606(a) of the Code,[7] which provides that any change in compensation of the elected office does not become effective until the beginning of a supervisor's next term; and 3) whether it erred in determining that Hernandez was entitled to participate in the plan without being reelected to a new term as a township supervisor. When an appellate court considers whether preliminary objections in the nature of a demurrer were properly sustained, our standard of review is plenary. *Mazur v. Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008). An appellate court may affirm a grant of preliminary objections only when, based on the facts pled, it is clear and free from doubt that the plaintiff will be unable to prove facts legally sufficient to establish a right to relief. *Id.* For purposes of evaluating the legal sufficiency of the challenged pleading, we must accept as true

---

[7] 53 P.S. § 65606(a).

all well-pled, material and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. *Id*.

In addressing the first issue, we consider whether the approval that was rendered, as described in the well-pled facts of the amended complaint, satisfied Section 606(b) of the Code, which provides:

> (b) Any benefit provided to or for the benefit of a supervisor employed by the township in any employe capacity under this act in the form of inclusion in a pension plan paid for in whole or in part by the township is compensation within the meaning of this act to the extent that benefit is paid for by the township and is *determined* by the board of auditors . . . . [Emphasis added.]

In order to ascertain the full extent of the Board of Auditors' statutory duty under Section 606(b), we first look to the plain language of the provision. *Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1104 (Pa. 2007) (holding that where the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent). A plain reading of Section 606(b) indicates that the Board of Auditors is required both to approve the inclusion of supervisor-employees in township pension plans, paid for in whole or in part by the township, *and* to determine pension-benefit compensation. In that regard, Section 606(b)'s somewhat implicitly stated requirement that the Board of Auditors approve the inclusion of supervisor-employees in township pension plans begs the question of what constitutes its "determination" of pension-benefit compensation. In accordance with Section 1903(a) of the Statutory Construction Act of 1972,[8] we consider the common and approved usage of the word "determine." In pertinent part,

---

[8] 1 Pa. C.S. § 1903(a).

8

"determine" has been defined as follows: "to fix conclusively or authoritatively." Merriam-Webster's Collegiate Dictionary at 340 (11th ed. 2004). We turn to an examination of key provisions in other sections of the Code where the legislature employed the term "determine."

In addition to Section 606(b), the legislature also included the term "determine" in Section 901 of the Code. Section 901 enumerates the duties of the Board of Auditors and provides, in pertinent part, that it "shall determine the compensations for the current year authorized in section 606 for supervisors employed by the township." 53 P.S. § 65901. Section 606(a) of the Code provides, *inter alia*, that, "[t]he compensation of supervisors, when employed . . . in any employee capacity . . . shall be determined by the board of auditors . . . ." 53 P.S. § 65606(a). This determination, *inter alia*, requires the Board of Auditors to determine a compensation "comparable to compensation paid in the locality for similar services." *Id*.

Moreover, the Code's provisions referencing the phrase "auditor approval" are further indicative that such approval be actively determined. Section 606(b)(3) of the Code requires auditor approval for changes in defined contribution plans, providing: "No change in the nature or rate of the contributions of a defined contribution plan and no change in the benefit formula of a defined benefit plan shall be initiated by the board of supervisors with respect to a supervisor-employee *without auditor approval*." 53 P.S. § 65606(b)(3) (emphasis added). In addition, even the Code's provision pertaining to the rescission of the auditors' approval of the inclusion of supervisor-employees in township pension plans lends support to the proposition that the Board of Auditors' approval, once given, carries weight

9

and, presumably, was actively determined. Section 606(b)(2) of the Code provides:

> (2) Once given, auditor approval for inclusion of supervisor-employees shall not be rescinded in any subsequent years as long as the pension plan remains in effect and the supervisors remain employed by the township and continue to meet the same requirements as other employes of the township who are eligible to participate in a pension plan; nor shall the auditors act in any way that disqualifies the pension plan under Federal Law.

53 P.S. § 65606(b)(2).

Therefore, especially in light of the manifest intent of the legislature in Section 606 of the Code to limit self-interested decision-making by supervisors, it is clear that the legislature intended for the auditors to assume an active role as watchdogs in fulfilling their duties under Section 606(b). That leads us to an analysis of the requisite specificity of the Board of Auditors' approval. Specifically, we consider whether it can fulfill its statutory duty by approving the terms of a *specific* pension plan or by just approving *some* plan.

In *White Deer Township*, 985 A.2d at 758, the Court reiterated the following fundamental principle: "[M]unicipalities are created by the state and as such, may do only those things which the state legislature has placed within their power in enabling statutes." (citations omitted.) Further, the Court observed that, "an ordinance must be in conformity with the provisions of the enabling statutes; if it conflicts therewith it is void." *Id*. (citation omitted). Particularly *apropos* here, the Court noted: "When public officials have a direct pecuniary interest in the matter being voted on, the enabling legislation which gives them the power to vote on such a matter must be strictly construed." *Id*. (citation omitted). *See also McCutcheon v. State Ethics Comm'n*, 466 A.2d 283, 287 (Pa. Cmwlth. 1983)

10

(observing that the legislature may establish a procedure whereby public officials with a dual interest can establish their own compensation, *e.g.* a pension, but noting that there must be strict compliance with such legislation and that it must be strictly construed), and *DeGeorge v. Young*, 892 A.2d 48, 53 (Pa. Cmwlth. 2006) (holding that a strict construction analysis applies when interpreting statutes where there is a potential for public officials to improperly discriminate in their own favor).

Therefore, a strict construction of the Code's provisions requiring auditor approval indicates that the Board of Auditors must give its approval to the terms of a *specific* pension plan, not just the adoption of *some* plan. Otherwise, the approval process, which includes both the approval of the inclusion of supervisor-employees in employee pension plans and a determination of pension-benefit compensation, would be rendered virtually meaningless. *See* Section 1921 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921 (presumption that legislature did not intend an absurd or unreasonable result).

The question presented here, then, is whether the current Board of Auditors can attempt to invalidate a pension plan because at the meeting where the resolution was passed by former supervisors and approved and signed by former auditors, some representations were made which may have been inaccurate. This determination will necessarily involve a balancing of the interest in the finality of legislation, which is facially regular in all respects, against the importance of insuring that auditors can play their watchdog role with an accurate understanding of that which they are asked to approve. In that regard, there is a strong

11

presumption regarding the finality of legislation.[9] There is also a presumption that municipal officials are acting within the purview of their elected offices and that their acts are regular and in conformity with the applicable law.[10] *See Whitemarsh Twp. Auth. v. Elwert*, 196 A.2d 843, 848 (Pa. 1964) (holding that, "[t]here is a factual presumption that municipal officers are properly acting for the public good"), and *Price v. Grencavage*, 531 A.2d 108, 111 (Pa. Cmwlth. 1987) (holding that, there is a presumption that the actions of public officials are within the limits of their discretion such that the judicial power to interfere in matters challenging acts committed to their discretion is highly limited).

In the present case, based on the well-pled and material facts, there is no indication that the Board of Auditors did not give its approval to a specific pension plan in accordance with its statutory duties under the Code. This is somewhat in contrast to the situation in *White Deer Township*, 985 A.2d at 765, where the record did not "disclose what, if any, role the board of auditors played in approving the post-retirement medical benefits granted by the Ordinance." Here, the former auditors, by virtue of their signatures, approved and signed the

---

[9] Notwithstanding the fact that the enabling legislation requires auditor approval for the inclusion of supervisor-employees in a pension plan funded, in whole or in part, by the township, the supervisors' resolution adopting such a plan constitutes the enactment of an ordinance such that there is a presumption of legality. *See White Deer Twp.*, 985 A.2d at 765 (holding that, "[t]he board of supervisors was empowered to grant to supervisor-employees post-retirement medical benefits as a form of deferred compensation in accord with the terms of Section 606(a), including auditor approval") *and* Section 5571.1(d)(1) of the Judicial Code, 42 Pa. C.S. § 5571.1(d)(1) (providing that, "[a]n ordinance shall be presumed to be valid and to have been enacted or adopted in strict compliance with statutory procedure.").

[10] Auditors are elected. Section 404(a) of the Code, *as amended*, added by Section 1 of the Act of November 9, 1995, P.L. 350, 53 P.S. § 65404(a). As auditors, they may not "at the same time hold any other elective or appointive township office or position or be an employe of the township for which he has been elected or appointed." Section 404(b) of the Code, 53 P.S. § 65404(b).

resolution that was passed by the former supervisors. The fact that the plan may have cost more or less than initially estimated and the fact that the Commonwealth's contribution, if any, was unknown, are of no moment. Those could not realistically be known with any certainty at the time the resolution was adopted and the resolution signed by the auditors contained no such terms. Therefore, any facts averred that the Board of Auditors' approval may have been based on flawed estimates of future financial performance does not establish a violation of Section 606(b). The differences in cost of the plan, to the extent they were significant, were lower than the estimates and so were not material, any more than the question of which state agency would subsidize the plan. Moreover, after years of experience, the Board made no averment that the actual contributions from the state varied materially from the estimate reflected in the minutes. Finally, there is nothing in the averments to suggest that the estimates were intentionally false or made by anyone with a corrupt motive. The facts alleged here simply do not present the kind of extraordinary circumstances, such as the presence of fraud, which would justify looking behind the signatures of elected officials in what could amount to an unwarranted fishing expedition, particularly many years after the fact. *See Township of Perkiomen v. Mest*, 522 A.2d 516, 520 (Pa. 1987) (holding that, in order to avoid government by the judiciary, "courts must use appropriate self[-]restraint when asked to review or second-guess decisions of elected municipal officials.").

Appellants' second and third issues are also without merit. They argue that the participation of supervisor-employees in the pension plan constitutes compensation "of the elected office" under Section 606(a) of the Code such that it would not become effective until the beginning of a supervisor's next term and

13

that, accordingly, Hernandez was not entitled to participate in the plan without being reelected to a new term as a township supervisor. Section 606(a) of the Code, however, clearly draws the distinction between the compensation of supervisors as elected officials, whose salary is capped by statute for six years until their next term of office, and the salary of supervisor-employees, whose salary is discretionary with the Board of Auditors. In that regard, two provisions from Section 606(a) are illustrative:

> *The compensation of supervisors, when employed* as roadmasters, laborers, secretary, treasurer, assistant secretary, assistant treasurer or *in any employe capacity* not otherwise prohibited by this or any other act, *shall be determined by the board of auditors*, at an hourly, daily, weekly, semi-monthly or monthly basis . . . . [Emphasis added.]
>
> . . . .
>
> Any change in salary, compensation or emoluments *of the elected office* becomes effective at the beginning of the next term of the supervisor. [Emphasis added.]

In addition, specifically regarding pension benefits and supervisor-employees, Section 606(b)(1) provides:

> (1) Supervisors are eligible for inclusion in township pension plans only if they are employed by the township in any employe capacity under this act. In order to be eligible for inclusion in the plans, supervisor-employes must meet the same requirements as other employes of the township who are eligible to participate in a pension plan. Pension plans shall not improperly discriminate in favor of a supervisor-employe.

53 P.S. § 65606(b)(1). Further, as we noted previously regarding the rescission of auditor approval for the participation of supervisor-employees in employee pension plans, such approval may not be rescinded "as long as the pension plan remains in effect and the supervisors remain employed by the township and continue to meet

14

the same requirements as other employes of the township who are eligible to participate in a pension plan . . . ." 53 P.S. § 65606(b)(2).

Moreover, Section 901 of the Code requires that the Board of Auditors set the current salary for supervisor-employees each year. Supervisors who are not employees are barred from participation in the pension plan by Section 606(b)(7) of the Code, 53 P.S. § 65606(b)(7). Therefore, the pension benefit (which is the same for all employees whether they are supervisors or not) is compensation for the supervisors' role as employees, not in their role as elected officials. Thus, it is not compensation "of the elected office" which may be changed only at the beginning of a new term in office. For the same reason, since Hernandez continued to be an employee, whether she was reelected to the office of supervisor was irrelevant to her right to participate in the plan. Where, as here, the language of the statutory provisions is clear, that language is presumed to be the best indication of legislative intent and there is no need to ascertain that intent by considering the factors set forth in Section 1921(c)(1)-(8) of the Statutory Construction Act of 1972.[11] *Chanceford*, 923 A.2d at 1104.

Accordingly, we affirm.

 

**BONNIE BRIGANCE LEADBETTER,**
Judge

---

[11] These factors include the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, the former law, the consequences of a particular interpretation, any contemporaneous legislative history, and legislative and administrative interpretations of the statute at issue. 1 Pa. C.S. § 1921( c)(1)-(8).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Delaware Township Board of     :
Auditors; Dennis Lee; Michael     :
Dickerson; and Jane E. Neufeld,     :
                      Appellants     :
    :
             v.     :    No. 1601 C.D. 2014
    :
Delaware Township; Pennsylvania     :
Municipalities Pension Trust;     :
Ileana F. Hernandez and Thaddeus     :
Parsell     :

# **O R D E R**

AND NOW, this 5th day of January, 2016, the order of the Court of Common Pleas of Pike County is hereby AFFIRMED.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge