# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| James Spinola, | : | |
| d/b/a/ Hillcrest Architecture, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 2120 C.D. 2015 |
| | : | Submitted: April 22, 2016 |
| Patrick Kelley; | : | |
| Waste Not Technologies, LLC, | : | |
| jointly and severally | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  September 21, 2016**


James Spinola, d/b/a Hillcrest Architecture (Appellant), appeals, *pro se*, from the order of the Court of Common Pleas of Monroe County that sustained the preliminary objections filed by Patrick Kelley and Waste Not Technologies, LLC (collectively, Appellees) and dismissed the third amended complaint filed by Appellant on the grounds that the complaint failed to state a breach of contract claim.  We affirm the trial court's dismissal of Appellant's breach of contract claim, however we remand for consideration of Appellees' preliminary objections as they relate to the first two counts of Appellant's third amended complaint,

which assert claims based upon the doctrines of promissory estoppel, *quantum meruit* and unjust enrichment.[1]

According to the allegations in Appellant's Third Amended Complaint, Kelley first contacted Appellant on November 29, 2011 for an estimate for the architectural design of a building for Appellees that was to be funded through a state grant. (Third Amended Complaint ¶¶5, 29.) Appellant began performing pre-design services that could be included in the application for the state grant and sent Kelley an estimate on December 1, 2011. (*Id.* ¶¶6, 30, 31, Ex. G.) Having not heard from Kelley in over one year, Appellant followed up in January 2013 to inquire about the status of the project and Kelley responded that he expected the design phase to begin that spring and he would keep Appellant posted. (*Id.* ¶¶7-8.) On June 17, 2013, Appellant visited and toured the project site at Kelley's request. (*Id.* ¶¶9-10.) Appellant sent Kelley a five-page proposed contract for professional architectural services on July 8, 2013, and Kelley responded on July 15, 2013 with three pages of changes to the proposed contract. (*Id.* ¶¶11-12, Ex. A.) Following his attorney's review, Appellant sent an email on July 19, 2013 responding to each of Kelley's proposed modifications to the original contract and discussing the scheduling challenges in completing the design work in five weeks as Kelley requested. (*Id.* ¶13, Ex. A.) Appellant concluded this email by stating: "We can schedule a start date for your project immediately and are anxious to proceed. If the above explanations are acceptable, please reply

---

[1] The appeal in this action is not within the jurisdiction of this Court and should have instead been filed in the Superior Court. *See* 42 Pa. C.S. § 762(a) (listing the categories of exclusive jurisdiction of the Commonwealth Court in appeals from final orders of the courts of common pleas). However, because no party has filed a timely objection to jurisdiction, this Court can hear this matter, as jurisdiction has been "perfected" pursuant to Section 704 of the Judicial Code, 42 Pa. C.S. § 704.

back and we will revise the Proposal accordingly and have it to you Monday." (*Id.* Ex. A.)

On July 21, 2013, Kelley sent an email to Appellant in which he stated:

> Hi Jim,
>
> Thank you for your reply. You may begin work immediately. However, there will be some changes to the scope.
>
> I would like you to work on the following topics as they are described in your latest email:
>
> > Schematic Design
> >
> > Design Development
> >
> > Construction Documents
>
> I will assume responsibility for the following topics as they are described in your latest email:
>
> > Bidding/Negotiations
> >
> > Construction Administration
>
> Please email to me a new contract reflecting the changes from the original contract. I will sign it and return it to you along with a check in the amount of $2,000.00. I will advise you if I feel the need to the have the project timetable accelerated. Thank you.
>
> Best regards,
>
> Pat

(*Id.* ¶14, Ex. A)

Appellant alleges that he began working immediately after receiving this email and mailed a revised contract to Kelley. (*Id.* ¶15, Ex. E.) On July 23, 2013, Kelley sent Appellant an email in which he stated:

> Jim,
>
> I have received your latest proposal. This proposal is not acceptable to me. You still have not indicated when this work will be completed. If I sign this contract, you would be within

3

your rights to perform the work at any time in the future (two years, three years or more from now.) Also, you have still included within your scope of work the advertisement for bidding, instructions to bidders, a bid bond form, prevailing wage rates, contractor's qualifications statement, performance and payment of bond references, insurance requirements and General and Supplementary Conditions of the Contract. I indicated to you in my recent email that I would perform these tasks. In addition you have increased your price. All of this is unacceptable to me. I will use another architect. Thank you.

Best regards,

Pat Kelley

(*Id.* ¶16, Ex. E.) Appellant contacted Kelley several times to discuss resuming their professional relationship; after not receiving any response, Appellant sent Kelley an invoice for services rendered on October 1, 2013 in the amount of $1,170. (*Id.* ¶¶18-19, Ex. C.) Kelley did not remit payment in response to Appellant's invoice. (*Id.* ¶¶20-22.)

On October 3, 2014, Appellant filed a civil action in the Magisterial District Court of Monroe County against Appellees and a judgment was issued in Appellant's favor in the amount of $3,930.50, which Appellees appealed to the trial court. In his third amended complaint,[2] Appellant brings three causes of action. In Count I, Appellant seeks damages in the amount of $1,170 for the design work done between July 21, 2013 when Kelley stated that Appellant could "begin work immediately" until July 23, 2013 when Kelly stated that the terms of

---

[2] Appellees filed preliminary objections to each of the three previous versions of Appellant's complaint, but Appellant amended the original and first amended complaint without the trial court ruling on those preliminary objections. The trial court sustained Appellees' preliminary objections to the second amended complaint in part, striking various paragraphs for including discussion of settlement talks between the parties and dismissing the third amended complaint in its entirety, with leave to replead, for failure to plead a breach of contract claim and failure to plead damages with sufficient specificity.

the latest agreement were "unacceptable." (*Id.* ¶¶26-27.) In Count II, Appellant seeks damages of $2,500 as compensation for pre-design services that Appellant alleged he performed that was incorporated in Appellees' application for a state grant. (*Id.* ¶¶28-33.) In Count III, Appellant asserts that the parties had come to a meeting of the minds and entered into a binding contractual relationship as of July 21, 2013 when Kelley directed Appellant to "begin work immediately" and that Kelley breached this contract when he sent his July 23, 2013 email stating that the terms of their agreement were now "not acceptable." (*Id.* ¶¶34-38.) In this count, Appellant seeks compensatory damages in the amount of $17,175 based upon the fees he would have been entitled to under the contract. (*Id.* ¶39.)

Appellees filed preliminary objections in the nature of a demurrer to the third amended complaint in which they object on the grounds that this complaint failed to state a claim because it does not plead the existence of a contract and does not adequately explain the damages requested. In addition, Appellees objected on the grounds that Appellant improperly joined a request to enforce a subpoena to produce documents and included a request in the third amended complaint for oral argument related to a mediation/arbitration provision in the draft contracts that had been exchanged between the parties. On September 28, 2015, the trial court issued an order sustaining the Appellees' preliminary objection for failure to state a breach of contract cause of action and dismissing the third amended complaint. In an accompanying opinion, the trial court explained that Appellant did not allege the existence of a contract because Kelley's July 21, 2013 email that advised Appellant to "begin work immediately" was not strictly an acceptance of Appellant's latest offer but instead contained additional language that changed the terms and scope of the contract and therefore this email was a

5

counter-offer. (Trial Court Opinion at 2-4.) The trial court concluded that because Kelley never signed the proposed agreement and Kelley's next communication to Appellant on July 23, 2013 was a repudiation of Appellant's latest draft and their professional relationship, there was no contract between the parties. (*Id.* at 4.) The trial court further stated that in light of its holding, it would not address Appellees' remaining preliminary objections. (*Id.*)

On appeal to this Court, Appellant argues that Kelley's July 21, 2013 email constituted acceptance of the most recent proposal that Appellant had sent Kelley and that Kelley's request in the July 21, 2013 email for Appellant to draft a new contract was simply to memorialize the terms on which the parties had agreed. Appellant further argues that the trial court erred in not addressing the first two claims based upon Appellees' failure to pay for architectural services actually rendered prior to Kelley's July 23, 2013 email because these claims are grounded in quasi-contract theories and do not depend on the existence of a contract.[3]

A claim for breach of contract exists where the party alleging the breach can show (i) the existence of a contract, (ii) a breach of a duty imposed by that contract, and (iii) damages resulting from the breach. *Fritz v. Glen Mills School*, 894 A.2d 172, 178 (Pa. Cmwlth. 2006); *Koken v. Steinberg*, 825 A.2d 723, 729 (Pa. Cmwlth. 2003). "In order to form a contract, there must be an offer,

---

[3] Our scope of review of a trial court's decision sustaining preliminary objections in the nature of a demurrer is plenary, and our standard of review is *de novo*. *Mazur v. Trinity Area School District*, 961 A.2d 96, 101 (Pa. 2008). An appellate court may affirm a grant of preliminary objection in the nature of a demurrer only when, on the facts pled, it is clear and free from doubt that the plaintiff will be unable to prove facts legally sufficient to establish a right to relief. *Mazur*, 961 A.2d at 101; *Delaware Township Board of Auditors v. Delaware Township*, 132 A.3d 523, 528 (Pa. Cmwlth. 2016). When evaluating the legal sufficiency of the challenged pleading, we must accept as true all well-pled, material and relevant facts alleged and every inference fairly deducible from those alleged facts. *Mazur*, 961 A.2d at 101; *Delaware Township Board of Auditors*, 132 A.3d at 528.

acceptance, and consideration or a mutual meeting of the minds." *Ribarchak v. Municipal Authority of City of Monongahela,* 44 A.3d 706, 708 (Pa. Cmwlth. 2012).

Upon review, we agree with the trial court that the third amended complaint does not state a claim for breach of contract. Kelley's statement in his July 21, 2013 email that Appellant should "begin work immediately" and that he "will sign" a revised contract could be interpreted in isolation as a tacit acceptance of Appellant's most recent proposed agreement, however, Kelley states in the very next sentence that he would like to make "changes to the scope" of the agreement and then lists the changes he would like Appellant to make. (Third Amended Complaint Ex. A.) Rather than an acceptance, this email viewed in its entirety clearly constituted a counter-offer. As our Supreme Court has explained,

> This court has long adhered to the position of 1 Restatement, Contracts, § 60 (1932), that "a reply to an offer, though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance but is a counter-offer." To constitute a contract, the acceptance of the offer must be absolute and identical with the terms of the offer.

*Hedden v. Lupinsky*, 176 A.2d 406, 408 (Pa. 1962) (citation omitted); *see also Hatalowich v. Redevelopment Authority of Monessen,* 312 A.2d 22, 24 (Pa. 1973); *Ribarchak*, 44 A.3d at 709; Restatement (Second) of Contracts § 59 (1981). Rather than assenting to the terms of Appellant's latest proposed agreement, Kelley's July 21, 2013 email proposed substantially different terms and thus is more properly considered a counter-offer than an acceptance.

Appellant and Kelley had also not come to a meeting of the minds with nothing left but to memorialize the agreement in writing. A meeting of the minds requires the concurrence of both parties to all the terms of the agreement;

7

anything less will result in a failure to execute an enforceable contract. *City of Erie v. Fraternal Order of Police, Lodge 7*, 977 A.2d 3, 12 (Pa. Cmwlth. 2009); *Department of Transportation v. Pennsylvania Industries for the Blind and Handicapped,* 886 A.2d 706, 713 (Pa. Cmwlth. 2005). In his July 21, 2013 email, Kelley removed two of the five categories of architectural services that Appellant had proposed to perform. (Third Amended Complaint Ex. A.) Appellant sent Kelley a revised agreement (*Id.* Ex. B), but Kelley informed Appellant in a July 23, 2013 email that Kelley was not pleased with this new draft because Appellant had not removed all of the services as Kelley had requested and Appellant had increased the price despite the fact that he would be providing fewer services. (*Id.* Ex. E.) Therefore, it was apparent that Kelley and Appellant were never in agreement on all terms of the agreement such that there could have been a meeting of the minds.

However, though Appellant did not allege a breach of contract and Count III of the Third Amended Complaint was properly dismissed, we must conclude that the trial court erred by dismissing the first two claims asserted by Appellant. In Counts I and II, Appellant seeks payment for architectural services that he performed for Appellees to prepare his initial estimate, which Appellant alleges was included in an application for a state grant that Appellees received, and the services he performed after Kelley's July 21, 2013 email when he told Appellant he could begin work until he received Kelley's July 23, 2013 email in which Kelley stated that their agreement was unacceptable and he would hire another architect. (*Id.* ¶¶26-33.) Appellant argues that he has causes of action for

8

promissory estoppel, *quantum meruit* and unjust enrichment,[4] asserting that he relied on Kelley's promise that he would be awarded the full contract, that Kelley was enriched by a public grant in excess of $500,000 based upon Appellant's work and that he had been explicitly authorized by Kelley to work in the period between July 21 and July 23, 2013. (*Id.* ¶¶27, 30, 32, 33.) Causes of action pursuant to promissory estoppel, *quantum meruit* and unjust enrichment do not depend on the existence of a valid, enforceable contract between the parties. *See Shafer Electric & Construction v. Mantia*, 96 A.3d 989, 996 (Pa. 2014) ("It is well-settled at common law...that a party shall not be barred from bringing an action based in *quantum meruit* when one sounding in breach of express contract is not available."); *Crouse v. Cyclops Industries*, 745 A.2d 606, 610 (Pa. 2000) (observing that the doctrine of promissory estoppel may be invoked where the plaintiff relies on a promise by the defendant but there is no enforceable agreement between the parties because the agreement was not supported by consideration); *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999) (stating that unjust enrichment is an equitable doctrine where the law implies a contract between parties to require one party to pay another for the value of a benefit conferred where no express contract exists). Therefore, the trial court erred in dismissing the third amended complaint on the ground that no contract was entered between the parties.

---

[4] Appellant also cited detrimental reliance in the third amended complaint, which is merely another name for a promissory estoppel claim. *Matarazzo v. Millers Mutual Group, Inc.*, 927 A.2d 689, 692 (Pa. Cmwlth. 2007).

Accordingly, we reverse the trial court's September 28, 2015 order to the extent it dismissed Counts I and II of the third amended complaint and remand for consideration of Appellees' remaining preliminary objections.

_____
JAMES GARDNER COLINS, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Spinola, : 
d/b/a/ Hillcrest Architecture, : 
                 Appellant : 
 : 
 : 
          v. :  No. 2120 C.D. 2015 
 : 
Patrick Kelley; : 
Waste Not Technologies, LLC, : 
jointly and severally : 

## ORDER

AND NOW, this 21st day of September, 2016, it is hereby ORDERED that the order of the Court of Common Pleas of Monroe County is hereby AFFIRMED to the extent it dismissed Count III of the third amended complaint filed by Appellant James Spinola, d/b/a Hillcrest Architecture, and REVERSED to the extent it sustained the preliminary objection in the nature of a demurrer to Counts I and II of the third amended complaint and dismissed the third amended complaint in its entirety. This matter is REMANDED for consideration of the remaining preliminary objections filed by Appellees Patrick Kelley and Waste Not Technologies, LLC to Count I and Count II of the third amended complaint.

        Jurisdiction Relinquished.

_____
JAMES GARDNER COLINS, Senior Judge